# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **ADAM ANDERSON** <br> 7891 Covington Avenue <br> Glen Burnie, Maryland 21061 <br> *Resident of Anne Arundel County* <br><br> ***Individually and On Behalf of Other Similarly Situated Employees*** <br><br> Plaintiff, <br><br> v. <br><br> **UNION JACK OF COLUMBIA, LLC** <br> 10400 Little Patuxent Parkway <br> Columbia, Maryland 21044 <br><br> Serve On: Resident Agent <br> Gary Ouellette <br> 9705 Briarcliffe Lane <br> Ellicott City, Maryland 21042 <br><br> And <br><br> **GARY OUELLETTE** <br> 9705 Briarcliffe Lane <br> Ellicott City, Maryland 21042 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Collective Action Claim <br><br><br><br> <u>Jury Trial Requested</u> <br><br><br><br> Civil Action No.: |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COLLECTIVE ACTION COMPLAINT FOR WAGES OWED**

ADAM ANDERSON, Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against, UNION JACK OF COLUMBIA, LLC and GARY OUELLETTE, Defendants, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, interest,

liquidated damages, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.* (hereinafter, "MWHL"), and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Ann. Code, Labor & Employment, §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the failure of Defendants, Union Jack of Columbia, LLC and Gary Ouellette to pay Plaintiff and other similarly situated employees all wages owed to them. Specifically, Defendants failed to pay Plaintiff and other similarly situated employees properly for overtime hours worked in excess of forty (40) hours per week.

As described herein, Defendant, Union Jack of Columbia, LLC is a restaurant and bar located in Columbia, Maryland. To the best of Plaintiff's knowledge, Defendants own and operate four restaurants in Maryland including Union Jack of Columbia, LLC. Their principal office is located at 9705 Briarcliffe Lane, Ellicott City, Maryland 21042. To better serve their customers Defendants employ a variety of employees, including General Managers, Assistant Managers. Front of House Managers, Sous Chefs, Cooks, Bartenders, Servers and Bus persons.

In August, 2015, Defendants hired Plaintiff to work as a "Front of House Manager." Defendants, however, classified Plaintiff as an hourly employee and paid him an hourly rate of $12/hour. Due to the demands of his job, Plaintiff regularly worked over forty (40) hours in a workweek. Defendants however, failed to properly compensate him for all hours worked. Defendants failed to pay Plaintiff and other similarly situated employees "time-and-a-half" for overtime hours worked, as well as other compensation owed under the law. Defendants illegally

paid Plaintiff and other similarly situated employees only "straight time" for all hours worked, including overtime hours in excess of forty (40) hours per week.

Plaintiff and other similarly situated employees received their regular rate of pay for all hours worked and no overtime premium. Consequently, Plaintiff is entitled to overtime compensation for all hours worked over forty (40) in a workweek. There is no bona fide dispute that Plaintiff was entitled to overtime premiums for all hours worked over forty (40) in a workweek as he was an hourly employee.

Through these unlawful acts, Defendants avoided the payment of overtime wages owed to Plaintiff and other similarly situated employees pursuant to the standards set forth by the FLSA, MWHL, and MWPCL. Upon information and belief, Defendants are currently engaged in this unlawful activity.

## **THE PARTIES**

1. Plaintiff, ADAM ANDERSON (hereinafter, "Anderson" or "Plaintiff") is an adult resident of Anne Arundel County, Maryland.

2. Defendant, UNION JACK OF COLUMBIA, LLC (hereinafter, "Union Jack" or "Defendant"), is a restaurant and bar located in Columbia, Maryland. Hereinafter, any reference to Defendant Union Jack shall include its corporate officers and all those empowered to act as agents of the corporation either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendants."

3. Defendant, OUELLETTE (hereinafter, "Ouellette" or "Defendant"), is the owner of Union Jack. Defendant Ouellette is an adult resident of Howard County.

4. Defendants Union Jack and Ouellette will hereinafter be referred to collectively as ("Defendants"). As the owner of Union Jack, Defendant Ouellette was integrally involved with establishing all of the policies and practices that brought about the circumstances that necessitated the filing of this Complaint. Both Defendants participated in the harm that gave rise to this action, and are jointly and severally liable for any damages found to arise therefrom. Therefore, no distinction will be made between which Defendant caused a particular harm to Plaintiff, as Defendants, for all intents and purposes, are indistinguishable as to their joint liability.

5. Defendants are subject to the FLSA, MWHL and MWPCL due to the amount of annual revenues generated by Union Jack; Defendants' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

6. At all times relevant to this Complaint, Plaintiff and other similarly situated employees engaged in interstate commerce by the nature of the duties they performed as part of their employment with Defendants.

7. Plaintiff worked for Defendants, who, at all times throughout Plaintiff's employment, met the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b), as well as MWPCL § 3-501(b).

8. At all times relevant to this Complaint, Plaintiff and other similarly situated employees worked as hourly non-exempt employees for Defendants and are entitled to the protections of the FLSA, MWHL, and the MWPCL.

9. From approximately August 3, 2015 to April 17, 2016, Plaintiff was employed with Defendants and held the title of "Front House Manager."

10. At all times relevant to this Complaint, Defendants controlled the administration of their business and set Plaintiff's schedule.

11. Defendants were actively engaged in the direct management and supervision of Plaintiff and other similarly situated employees.

12. Defendants possessed and exercised the authority to schedule and control the hours worked by Plaintiff.

13. Defendants had and exercised the authority to control Plaintiff's duties and the duties of other similarly situated employees as well as the manner in which those duties were performed.

14. Defendants had the power and authority to change the course of Plaintiff's duties and the duties of other similarly situated employees.

15. Plaintiff and other similarly situated employees recognized Defendants' authority and obeyed Defendants' instructions.

16. Defendants made all decisions relating to the rates and methods of pay for the Plaintiff and other similarly situated employees.

## JURISDICTION AND VENUE

17. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

18. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

19. Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

20. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

21. This Honorable Court has personal jurisdiction over Defendant Union Jack, as Defendant is a corporation incorporated under the laws of Maryland and it conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

### *Employment*

22. On August 3, 2015, Plaintiff was hired by Defendants to work as a "Front of House Manager", a position he held until he voluntarily resigned on May 17, 2016.

### *Duties*

23. As a "Front of House Manager", Plaintiff Anderson was responsible for the day-to-day operation and management of the main restaurant as well as helping in catering and event planning operations. He was responsible for supervising the front of house staff and reported to the Assistant Manager and General Manager of the restaurant. His task/duties were as follows:

24. Ordering soda/beverages and front of house supplies like napkins, paper towels, takeout supplies, cleaning supplies and other supplies as needed.

25. Receiving and inspecting deliveries of soda/beverages and supplies that arrived in order to confirm their quality and quantity and signing off on those deliveries.

26. Paying Defendants' vendors' invoices when the soda/beverages and/or supplies were delivered. Plaintiff would either pay the vendors in cash or by checks, which were signed by Defendant Ouellette.

27. Performing inventory on soda/beverages on a weekly basis.

28. Handling event planning. Plaintiff handled customer reservations for events, booked rooms/sections of the restaurant, managed and supervised the setting up of the restaurant for parties, banquets, receptions and other events.

29. Staff scheduling, which involved preparing weekly schedules, approving/denying requests for leave and determining which staff would cover which shifts.

30. Hiring and firing of new front of house employees.

31. Training newly hired servers on customer service issues.

32. Supervising about twenty (20) servers, six to eight (6-8) bartenders and about four to eight (4-8) kitchen staff. His supervisory role entailed making sure there was sufficient staff in place during each shift to work and provide service to Defendants' customers. Additionally, Plaintiff handled minor employee issues that arose, prepared write ups and reports on servers' performance and ensured that all employees clocked in and out for their shifts.

33. Resolving customers' complaints and interacting with customers regarding the food/service being provided to ensure that Defendants' customers left the restaurant satisfied.

34. Balancing all cash drawers and preparing bank deposits for the next day.

35. Handling marketing for Defendants. Plaintiff posted media promotions on face book, twitter and Instagram and was responsible for regularly updating these social media sites.

36. In approximately February 2016, the General Manager of Union Jack left to manage a newly opened restaurant for Defendants. Consequently, the Assistant Manager, Jimmy

Brown took on part of the General Manager's responsibilities and was later officially promoted to the General Manager position. Plaintiff therefore helped take counts of liquor and beer in stock and provided the totals to the Mr. Brown so he could place the liquor and beer orders.

37. Plaintiff Anderson exercised some amount of discretion in the manner in which he was to perform his assigned tasks.

38. Plaintiff did not have any input into or discretion with regard to any of the terms and conditions of employment for himself of for any of Defendants' other employees.

39. Plaintiff did not formulate any of Defendants' policies or practices or interpret any information for Defendants.

40. None of Plaintiff's responsibilities required an advanced degree or specialized education or intellectual training.

41. Plaintiff satisfied the requirements of his job and adequately performed his duties to benefit Defendants, as well as Defendants' customers.

**Wages**

42. For the entirety of his employment with Defendants, Plaintiff worked as an hourly employee.

43. For the aforementioned work, from approximately August 3, 2015 to May 17, 2016, Plaintiff Anderson received weekly payments reflecting a pay rate of twelve dollars ($12.00) per hour.

44. Plaintiff did not receive an overtime rate of "time-and-a-half" his regular hourly rate for any hours worked over forty (40) in a workweek. Instead, Plaintiff received only "straight time" for all hours worked.

*Schedule*

45. Plaintiff worked five (5) to six (6) days a week and worked at various times both opening and closing shifts. Opening shift was from 10:00 a.m. to 5:00 p.m. and the closing shift was from 4:00 p.m. to close of business at around 2:00 a.m.

46. Due to the demands of his job, Plaintiff would consistently work far more than his scheduled hours and more than forty (40) hours per week. Particularly during the busiest days, which were normally Thursdays through Sundays, Plaintiff regularly arrived at work prior to the beginning of his scheduled shift and would leave about two hours after his shift ended or after the restaurant closed.

*Overtime*

47. During many pay periods, Plaintiff worked well over forty (40) hours per workweek. Plaintiff consistently worked as many as forty-five (45) to seventy (70) hours each workweek.

48. Whenever, Plaintiff worked the closing shift, he consistently stayed after close of business to supervise the cleaning and set up of the restaurant for the next day.

49. Plaintiff was also responsible for handling any employee issues that arose. Consequently, he would make sure all his staff clocked out and did not loiter around at the end of their shifts after clean up and set up. This contributed to the amount of overtime Plaintiff worked.

50. Plaintiff was responsible for balancing all cash drawers and preparing bank deposits for the next day. This contributed to the amount of overtime Plaintiff worked as these duties could not be done until the shift was over.

51. Since Plaintiff was the Front of House Manager, he consistently would stay well beyond his shift ended to adjust schedules or find people to work the following day's shifts in case an employee called out or needed a day off for one reason or other. This contributed to the amount of overtime Plaintiff worked. All the above tasks noted in paragraphs 48 to 51 could take about two hours or more to accomplish after his regular shift.

52. Plaintiff's regular schedule did not include a designated lunch break and Plaintiff's excessive workload often prohibited him from taking a lunch break. Plaintiff would regularly work straight through his assigned shift without taking any break. This also contributed to the amount of overtime Plaintiff worked.

53. Plaintiff was also required to go into work early to attend lengthy meetings with Defendant Ouellette every last Thursday of each month. This also contributed to the amount of overtime Plaintiff worked.

54. As noted in Paragraph 36, Plaintiff Anderson had to assume some of the duties of the Assistant Manager from approximately April – May 2016, he also had to take on additional shifts, this increased Plaintiff's workload substantially and contributed to the amount of overtime he worked.

55. Plaintiff Anderson, would sometimes have to order soda/beverages after he got home from work; especially on busy days when he did not get the chance to place the orders at work. This contributed to the amount of overtime Plaintiff worked.

56. Regardless of how many hours he and other similarly situated employees worked, Plaintiff and other similarly situated employees were only paid "straight time."

57. There is no bona fide dispute that Plaintiff and other similarly situated employees are owed overtime wages for hours worked over forty (40) in a workweek.

58. Defendants were well aware of the overtime hours Plaintiff and other similarly situated employees were regularly required to work yet made no effort to pay the overtime premium.

59. Defendants were actively engaged in the scheduling, management and direction of Plaintiff and other similarly situated employees.

60. Defendants controlled and supervised the work performed by Plaintiff and others similarly situated and suffered or permitted and in some instances required them to work more than forty (40) hours a week.

61. In bad faith, Defendants withheld overtime wages owed to Plaintiff. Even after he made inquiries regarding overtime wages missing from his weekly paychecks, Plaintiff's inquiries were ignored or deflected and Defendants continued to withhold overtime premiums from Plaintiff and other similarly situated employees.

62. Defendants have willfully withheld the overtime wages Plaintiff earned during his employment with Defendants.

63. At the time of Plaintiff's resignation, Defendants were aware that Plaintiff had worked over forty (40) hours during many workweeks but had not received an overtime premium for those hours worked over forty (40).

64. Defendants intentionally continued to withhold the wages owed to Plaintiff, in direct violation of the MWPCL.

65. Consequently, Plaintiff seeks his overtime wages owed, liquidated and/or trebled damages and any other relief available through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

66. Defendants employed Plaintiff and other similarly situated employees to work various positions in their establishment.

67. The FLSA requires employers to compensate covered, hourly, non-exempt employees such as Plaintiff and similarly situated employees, overtime wages at "time-and-a-half" for hours worked over forty (40) within a single workweek.

68. Defendants paid Plaintiff and other similarly situated employees on an hourly basis.

69. Defendants knew that Plaintiff and other similarly situated employees typically and customarily worked over forty (40) hours per week and required or permitted them to regularly work more than forty (40) hours per week.

70. Defendants knew or should have known that Plaintiff and other similarly situated employees were entitled to overtime pay at time and a half for all hours worked over forty (40) in a single workweek as hourly non-exempt employees.

71. Plaintiff and other similarly situated employees did not receive any overtime premiums for the hours worked over forty (40) in a workweek. Instead, Plaintiff and other similarly situated employees received their regular hourly rate for all hours worked.

72. Pursuant to the FLSA, Plaintiff commences this collective action on behalf of himself and other similarly situated employees and against the Defendants for the payment of wages owed reflecting an overtime rate not less than one and a half (1.5) times the regular rate of pay.

73. Plaintiff consents to be a party Plaintiff in this matter. Plaintiff's consent form is attached to this Complaint as Exhibit A. It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

74. There are other similarly situated current and former employees of Defendants that have been harmed by Defendants' common scheme to underpay its employees and violate the FLSA.

75. These similarly situated persons are known to Defendants and are readily identifiable through Defendants' records.

76. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

77. Upon information and belief, other similarly situated employees will choose to join Plaintiff in this action and opt in to this lawsuit to recover unpaid wages and other available relief.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *(As to All Defendants)*

### *Count I - Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and all Members of the Collective Action Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become a Party Plaintiff.*

78. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

79. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

80. As described above, Plaintiff has not received from Defendants compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendants failed to properly compensate Plaintiff for these additional hours, for which Plaintiff was only paid "straight time".

81. Defendants willfully and intentionally failed to properly compensate Plaintiff for the overtime hours he worked by unjustifiably paying Plaintiff ''straight time." There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendants.

82. Under the FLSA, Plaintiff is entitled to additional wages from Defendants to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

***Count II - Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff and All Those to Be Joined as Plaintiffs During the Course of this Action by the Filing of Consent Forms, by Motion, or by Any Other Means Deemed Just and Equitable by This Honorable Court.***

83. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

84. Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate for hours worked over forty (40) in a regular workweek.

85. Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

86. Plaintiff has not received compensation from Defendants reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; rather, Defendants unlawfully compensated Plaintiff for all hours by paying Plaintiff and other similarly situated

employees "straight time" for all hours worked, including those in excess of forty (40) per workweek.

87. Under MWHL, Plaintiff is entitled to additional wages from Defendants for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly rate.

***Count II - Violation of MWPCL: Failure to Pay Wages Owed to Plaintiff and All Those to Be Joined as Plaintiffs During the Course of this Action by the Filing of Consent Forms, by Motion, or by Any Other Means Deemed Just and Equitable by This Honorable Court.***

88. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

89. Plaintiff is entitled to wages under the Maryland Wage Payment Collection Law, Labor and Employment §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

90. Plaintiff has not received compensation from Defendants for additional wages owed for work performed before the termination of his employment in accordance with §3-505(a). This is specific to Defendants' failure to pay Plaintiff overtime for all hours worked over forty (40) in a workweek.

91. Defendants willfully and intentionally withheld from Plaintiff the wages owed to him and continued to violate the MWPCL, even after Plaintiff informed Defendants of the violation. Moreover, there is no bona fide dispute that Plaintiff is owed additional wages for work performed while employed by Defendants.

92. Plaintiff suffered both social and economic harms as a result of Defendants' willful and intentional withholding of wages owed to him for work performed for Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and other similarly situated employees, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and emails of all those individuals who are or were similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

c) Judgment against Defendants for their failure to properly pay Plaintiff and others similarly situated in accordance with the standards set forth by the FLSA;

d) Judgment against Defendants for their failure to pay Plaintiff and others similarly situated in accordance with the standards set forth by MWHL;

e) Judgment against Defendants for their failure to pay Plaintiff and others similarly situated in accordance with the standards set forth by MWCPL;

f) Judgment against Defendants, classifying their conduct as willful and not in good faith;

g) Judgment against Defendants, classifying Plaintiff and all similarly situated employees as hourly non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

h) An award against Defendants for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's regular hourly rate for all overtime hours worked, to Plaintiff and other similarly situated employees;

i) An award of liquidated or treble damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff and others similarly situated, whichever is deemed to be just and equitable by this Honorable Court;

j) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendants;

k) Leave to add additional Plaintiffs to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

l) All further relief deemed just and equitable by this Honorable Court.

**REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on his behalf and those similarly situated.

Respectfully submitted,

*/s/ George E. Swegman*
George E. Swegman, Esquire (#19444)
gswegman@nicholllaw.com
Benjamin L. Davis, Esquire (#29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*